**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MACARTON N. PIERRE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:23-cv-262 |
| | ) | |
| v. | ) | District Judge Susan Paradise Baxter |
| | ) | Magistrate Judge Patricia L. Dodge |
| | ) | |
| SGT. BRIAN BATES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.      Recommendation**

It is respectfully recommended that the Motion for Summary Judgment filed by Defendant

Brian Bates (ECF No. 65) be granted.

**II.     Report**

**A.      Relevant Procedural History**

Plaintiff Macarton N. Pierre, an inmate in the custody of the Pennsylvania Department of

Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Brian

Bates, a correctional officer at the State Correctional Institution at Albion. He asserts claims for

violation of his civil rights under the First, Eighth, and Fourteenth Amendments.

The operative complaint in this case is the Amended Complaint, filed on January 29, 2024.

(ECF No. 20.) As construed by this Court, Plaintiff asserts four claims against Bates stemming from

an incident that occurred on April 21, 2023: (1) an Eighth Amendment excessive force claim based

on Bates's use of force; (2) an Eighth Amendment claim for failing to protect Plaintiff from the

excessive use of force by other corrections officers; (3) a First Amendment retaliation claim based

on Bates's use or authorization of excessive force in response to Plaintiff's Black Lives Matter protest; and (4) a Fourteenth Amendment equal protection claim. (ECF No. 39 at 3.)

After the Amended Complaint was filed, Bates moved for partial dismissal of the Amended Complaint. In his motion, he sought dismissal of the claims against him in his official capacity and the equal protection claim. (ECF No. 34.) The motion was granted as to claims asserted in his official capacity and denied as to the equal protection claim. (ECF No. 46.) Bates subsequently filed an Answer (ECF No. 49) and discovery commenced.

Bates now moves for summary judgment in this favor that is supported by a Brief, a Concise Statement of Material Facts, and an Appendix. (ECF Nos. 65-68.) Plaintiff filed a Response, and a Responsive Concise Statement of Material Facts. (ECF Nos. 77-78.) The motion is ripe for review.

### B.    Facts

Plaintiff's claims arise from an altercation on April 21, 2023. According to the Amended Complaint, another officer, Giroux, was verbally abusive to him. (ECF No. 20 ¶ 4.) When he complained to Bates, he also became verbally abusive. (*Id.*) When Plaintiff objected, Bates told him he was a "nobody" and directed him to return to his cell. (*Id.*) When Plaintiff reached his cell and waited for the door to open, he shouted "Black Lives Matter." (*Id.*) Plaintiff claims that Bates then said, "we will put you up nigger" and along with Giroux, began physically abusing him. (*Id.* ¶ 5.) Plaintiff contends that he then endured "a variety of guard brutality" by Bates and others, resulting in lacerations, abrasions, and contusions and aggravation of prior ligament damage. (*Id.*) He claims that he was attacked for expressing his political views and because of his race. (*Id.*)

This altercation was captured on several cameras and video footage, without sound, was preserved. The Court has reviewed the available videos and in relevant summary, they depict the following:

As Plaintiff walks across the dayroom, he is verbally confronted by two corrections officers, presumably Bates and Officer Giroux. The officers and Plaintiff appear to have a heated conversation based on their hand gestures, which concludes by Bates pointing upstairs and Plaintiff departing up the stairs. Plaintiff reaches a cell door on the balcony above the dayroom and, seemingly unable to enter the cell, he turns, leans on the balcony railing and appears to shout something towards the dayroom below. Bates and Giroux then cross the dayroom, mount the steps and head towards Plaintiff. When Giroux attempts to remove Plaintiff's arm from the railing, he strikes at her with both arms, throwing her against the wall. Bates then moves towards Plaintiff, who meets Bates' advance with a punch to Bates' head. Bates puts his arms around Plaintiff and the two fall to the floor, with Plaintiff on top of Bates. Plaintiff continues to strike at Bates. The two struggle and Giroux joins Bates in attempting to contain Plaintiff on the floor. Another corrections officer arrives and assists Giroux and Bates in gaining control of Plaintiff by restraining his legs. Additional officers arrive and assist in restraining Plaintiff. Bates extricates himself from the pile and walks away, out of camera view. Giroux also extricates herself and leans on the railing. The other officers then stand Plaintiff up and walk him out of the view of the camera. Giroux departs in the same direction. Plaintiff is on the ground for a total of less than two minutes.

Plaintiff filed several written grievances about the events of April 21, 2023. Grievance #1040433 asserted a grievance about his glasses, which were allegedly broken during the incident. That grievance is not relevant to this case.

A second Grievance, #1031275, which is dated April 27, 2023, states as follows:

I am grieving the response of staff pertaining to a physical altercation between Sgt. Bates and [Plaintiff]. On the Top tier of Echo Bravo (E-B). Approximately 8:50 a.m. on 4/21/23 after [Plaintiff] was placed in restraints including Handcuffs & was compli[a]nt when ofcs. told [Plaintiff] to get up & walk, several officers began verbally assaulting, choking, punching, dragging down steps, slammed to ground hitting his head then place[d] in the same manuever [sic] as George Floyd where [Plaintiff] shouted 5 times he couldn't breathe with several officers choking/strangulating him, then picked up & smashed into E/B front door & into the wall in the corridor of (Echo) E-Block.

(ECF No. 68-2 at 4).[1]

_____

[1] Prison staff notified Plaintiff that an extension of response time to the grievance was required in order to appropriately investigate the allegations therein. (ECF No. 68-2 at 3.)

3

Plaintiff was advised on September 22, 2023 that the initial review response was pending and that once an investigation into his allegations was completed, an initial response would be completed and distributed to him. (ECF No. 68-2 at 1.) He was also advised that if he was dissatisfied with the response, he could appeal to the Facility Manager at SCI-Albion. (*Id.*) This grievance was denied on November 21, 2023. (ECF No. 68-2 at 2.)

Plaintiff concedes that he did not file an appeal from this denial; however, he asserts that he could not file an appeal because the initial review response was not forwarded to SCI-Greene (to which he evidently had been transferred) or mailed to him. (ECF No. 67 ¶ 4; ECF No. 78 ¶ 4.)

C.    **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*

Once the moving party has met their initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*,

4

475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 Fed. Appx. 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 Fed. Appx. 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

### D.    <u>**Discussion**</u>

#### 1.    <u>Exhaustion of Administrative Remedies</u>

Bates first argues that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies with regard to the claims raised. (ECF No. 66 at 2-6.)

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)(a). The Supreme Court has held that prisoners must exhaust their administrative remedies prior to bringing suit. *Woodford v. Ngo*, 548 U.S. 81 (2006). The Court has also held that the PLRA requires "proper exhaustion," that is, exhaustion as set forth in the procedures described. *Id.*

Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust available administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). Importantly, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill v. Gillis*, 372 F.3d 218, 230-31 (3d Cir. 2004) ("prison grievance procedures supply the yardstick for measuring procedural default."). Thus, the procedural requirements for exhaustion in a given case "are drawn from the policies of the prison in question rather than from any free-standing federal law." *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

The DOC's relevant inmate grievance system is set forth in DC-ADM 804. The DOC has adopted a three-part grievance process that inmates must follow. After a grievance is filed, it is subject to an initial review by a correctional official. If dissatisfied with the results of the initial review, an inmate must then appeal to the Facility Manager and if still dissatisfied, appeal to the Secretary's Office of Inmate of Grievances and Appeals ("SOIGA"). *See* 37 Pa. Code § 93.9; DC-ADM 804; *Spruill*, 372 F.3d at 232.

It is undisputed that Plaintiff filed a grievance but did not appeal to the Facility Manager. Therefore, he failed to exhaust his administrative remedies as it relates to the grievance at issue. At the same time, he asserts that he never received the initial review response, and Defendant has not submitted any evidence confirming that the response was sent to Plaintiff. Therefore, there is a material issue of fact regarding exhaustion.

Thus, the Court assumes for the purposes of disposing of Bates' motion that Plaintiff did not receive the initial review response and that the appeal process was therefore unavailable to him, *see Small v. Camden County*, 728 F.3d 265, 273 (3d Cir. 2013) (holding that the appeals process was unavailable to an inmate who failed to receive a response to grievances)  Nonetheless, a review of the content of his grievance demonstrates that he failed to grieve the claims he has asserted against Bates.

Plaintiff's grievance expressly states that "I am grieving the **response of staff** pertaining to a physical altercation between Sgt. Bates and Pierre" and the events that occurred **after** he was handcuffed. (ECF No. 68-2 at 4) (emphasis supplied.) Other than a reference to an altercation with Bates, all of the complained-of conduct occurs thereafter. As represented in the grievance, "several officers" (but not Bates) engaged in "choking, punching, dragging down steps, slammed to ground hitting his head then place[d] in the same manuever [sic] as George Floyd where [Plaintiff] shouted 5 times he couldn't breathe with several officers choking/strangulating him, then picked up & smashed into E/B front door & into the wall in the corridor of (Echo) E-Block." (*Id.*) Indeed, the grievance does not describe any misconduct committed by Bates. Thus, even if the grievance appeal process was unavailable to Plaintiff, the focus of the grievance he did submit is the conduct of "staff" and "several officers," not Bates. Thus, while an altercation with Bates preceded the alleged conduct by others, Plaintiff failed to use the administrative remedy process with regard to

any claim he may have against Bates. *See, e.g.*, *Hughes v. Hayes*, 1:18-cv-50, 2018 WL 6697184 (W.D. Pa. Dec. 20, 2018). As Plaintiff did not grieve Bates' conduct, Bates is entitled to summary judgment in his favor with respect to all claims asserted against him.

    2.   <u>Alternatively, Bates is Entitled to Judgment on the Merits</u>

Alternatively, if the Court were to conclude that Plaintiff's reference in the grievance to an altercation with Bates was sufficient to exhaust his excessive force, failure to protect, and retaliation claims, Bates remains entitled to judgment in his favor with respect to all of them.[2]

As to Plaintiff's excessive force claim, the pivotal inquiry is whether "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (internal citations and quotations omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Several factors guide this analysis, including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted: (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Smith*, 293 F.3d at 649 (citations omitted).

To prove the related failure-to-protect claim, Plaintiff must "show: (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (abrogated on

---

[2] There is no reference in the grievance of any conduct that would indicate that Plaintiff was asserting Bates violated his right to equal protection. Thus, there is no question that Plaintiff failed to grieve his equal protection claim and that judgment should be granted in Bates' favor on this claim for failure to grieve it for the reasons set forth in the preceding section.

other grounds by *Bistrian v. Levi*, 912 F.3d 79, 84 (3d Cir. 2018)). "'Deliberate indifference' in this context is a subjective standard: 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* One subset of failure to protect claim is for a failure to intervene, which is the type of claim Plaintiff is bringing in this case. As the *Bistrian* court explained, "a corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had 'a realistic and reasonable opportunity to intervene' and 'simply refused to do so.'" *Id.* at 371 (quoting *Smith*, 293 F.3d at 650-51).

As for the retaliation claim, a prisoner must point to evidence that: (1) he was engaged in constitutionally protected conduct; (2) the defendant at issue took adverse action against him; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that adverse action. *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). If the prisoner establishes a prima facie case of retaliation, the burden shifts to a defendant to demonstrate that he would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. *Rauser*, 241 F.3d at 334. "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Laurensau v. Pluck*, No. 2:12-cv-623, 2013 WL 4779010, at *11 (W.D. Pa. Sept. 5, 2013) (citations omitted).

Because there is video evidence of the events upon which Plaintiff's claims are premised, the Supreme Court's holding in *Scott v. Harris*, 550 U.S. 372 (2007), is significant to the Court's analysis. In *Scott*, a videotape of the events at issue flatly contradicted the plaintiff's allegations. *Id*. at 379-80. The Court held that: "When opposing parties tell two different stories, one of which

9

is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. *See also Morgan v. Borough of Fanwood*, 680 Fed. Appx. 76, 80 (3d Cir. 2017) ("when, as here, there is reliable video footage of the facts in the record, we view the facts in the light as depicted by the videotape.")

As discussed above, the Court has reviewed the video of the incident in question in this lawsuit. It contradicts Plaintiff's allegations. His specific contentions that Bates retaliated against him by the use of excess force, or by failing to intervene when the other officers came onto the scene to assist Bates and Giroux, is belied by the events captured on the video. As depicted on that footage, after Plaintiff reaches the top of the stairs, he shouts something towards Bates and Officer Giroux. The officers approach Plaintiff and he strikes Giroux as she attempts to remove his hand from the railing. Bates then moves towards Plaintiff and Plaintiff punches him. As Bates puts his arms around Plaintiff, they fall to the floor with Plaintiff on top of Bates. Plaintiff continues to strike at Bates. Giroux joins Bates in trying to contain Plaintiff on the floor. Another corrections officer arrives and assists Giroux and Bates in gaining control of Plaintiff by restraining his legs. Additional officers arrive and assist in restraining Plaintiff. Bates extricates himself from the pile and walks away, out of camera view. The other officers then stand Plaintiff up and walk him out of the view of the camera.

In light of the events captures on video, no reasonable jury could credit Plaintiff's version of events. The video demonstrates that Bates did not engage in excessive force, nor did the other officers who assisted in gaining control of Plaintiff. Indeed, Plaintiff instigated the altercation. The force applied was appropriate and no more than necessary to bring the situation under control.

Similarly, accepting as true Plaintiff's representation that he made the statement "Black Lives Matter," which is constitutionally protected speech, there is no evidence from which a reasonable jury could conclude any adverse action in the form of excessive force was employed by Bates, who was repeatedly struck by Plaintiff after Bates attempted to assist Giroux, or that Plaintiff's statement was a substantial or motivating factor in Bates' actions.[3]

### E.    Conclusion

For these reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment of Defendant Brian Bates (ECF No. 65).

Under the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated:  February 13, 2026                              /s/ Patricia L. Dodge
                                                       PATRICIA L. DODGE
                                                       United States Magistrate Judge

---

[3] Any motive that Giroux may or may not have had in response to Plaintiff's statement is not relevant to claims against Bates.

11